## NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>TRENT ALLEN BATEMAN; MOUNTAIN THUNDER COFFEE PLANTATION INTERNATIONAL, INC.; NATURESCAPE HOLDING GROUP INTERNATIONAL, INC.,<br><br>Debtors. | BAP Nos. HI-18-1302-TaSKu<br>HI-18-1306-TaSKu<br>HI-18-1307-TaSKu<br><br><br>MEMORANDUM* |
| TRENT ALLEN BATEMAN,<br><br>Appellant,<br><br>v.<br><br>GEMCAP LENDING I, LLC,<br><br>Appellee. | Bk. No. 1:17-bk-01101<br><br>Adv. No. 1:18-ap-90002 |

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

| | |
|---|---|
| TRENT ALLEN BATEMAN, individually; LISA J. BATEMAN, individually; LISA J. BATEMAN, Co-Trustee; TRENT ALLEN BATEMAN, Co-Trustee; BROOKE DECKER, | Bk No. 1:16-bk-00984<br><br>Adv. No. 1:17-ap-90008 |
| Appellants, | |
| v. | |
| GEMCAP LENDING I, LLC; ELIZABETH A. KANE, TRUSTEE; UNITED STATES TRUSTEE, | |
| Appellees, | |

| | |
|---|---|
| TRENT ALLEN BATEMAN, individually; LISA J. BATEMAN, individually; LISA J. BATEMAN, Co-Trustee; TRENT ALLEN BATEMAN, Co-Trustee; BROOKE DECKER, | Bk No. 1:16-bk-00982<br><br>Adv. No. 1:17-ap-90007 |
| Appellants, | |
| v. | |
| GEMCAP LENDING I, LLC; ELIZABETH A. KANE, TRUSTEE; UNITED STATES TRUSTEE, | |
| Appellees. | |

Argued and Submitted on July 18, 2019
at Pasadena, California

Filed – August 7, 2019

Appeal from the United States Bankruptcy Court
for the District of Hawaii

Honorable Robert J. Faris, Chief Bankruptcy Judge, Presiding

_____

Appearances:     Frederick John Arensmeyer of Dubin Law Offices argued
for appellants; and Mark C. Taylor of Waller Lansden
Dortch & Davis, LLP argued for appellee GemCap
Lending I, LLC.

_____

Before: TAYLOR, SPRAKER, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Despite appointment of a chapter 11[1] trustee, renewed litigation involving prepetition lender GemCap Lending I, LLC rapidly erupted in the involuntary cases of Mountain Thunder Coffee Plantation International, Inc. and Naturescape Holding Group, International, Inc. GemCap confronted obstacles to realization on its collateral, subsequently filed an adversary complaint, and obtained orders compelling cooperation

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

from the Mountain Thunder and Naturescape principals, Trent A. Bateman, Lisa J. Bateman, and Brooke Decker. When it discerned a violation of the bankruptcy court's directives, it requested contempt sanctions against the individuals. And when Mr. Bateman filed his own chapter 7 case, it sought determinations of nondischargeability on account of the contempt and alleged prepetition fraud and conversion. After a four day trial, the bankruptcy court found in GemCap's favor in all respects.

The Batemans and Ms. Decker appeal from these judgments.[2] Their appellate strategy, however, does not lead to success. As to Ms. Bateman and Ms. Decker, they ignore the consequences of their decision to refrain from testimony before the bankruptcy court, the fact that the bankruptcy court orders at issue required affirmative action, and the record that evidences no such effort on their part. As to Mr. Bateman, he contests the bankruptcy court's factual findings by reproducing his trial testimony and faulting the bankruptcy court for believing GemCap's witnesses and finding him not credible.

We owe significant deference to the bankruptcy court's findings of credibility and fact, and we discern no error on the record before us. Accordingly, we AFFIRM.

---

[2] The parties filed combined briefs addressing all three appeals. Because of the substantial overlap in the appeals, which resulted in a joint trial, we dispose of them in a single decision.

## FACTS

Prepetition, Trent Bateman, Lisa Bateman, and Brooke Decker operated Mountain Thunder and Naturescape (collectively, "Borrowers"). The Batemans are married; Brooke Decker is their daughter. Mr. Bateman was Mountain Thunder's president, but despite being involved in its day-to-day management, he was not an officer or shareholder of Naturescape. Ms. Bateman was also an officer of Mountain Thunder and both she and Ms. Decker were Naturescape officers.

Borrowers purchased coffee from growers, processed it, and sold it at wholesale and retail.

In 2011, Borrowers entered into a lending agreement (the "Agreement") with GemCap and obtained a $440,000 term loan and a $1,550,000 revolving line of credit. They provided a first priority lien on all assets to secure their repayment obligations. The Agreement required Borrowers to deposit collections in a lockbox account.

The Batemans, as Mountain Thunder officers, and Ms. Bateman and Ms. Decker, as Naturescape officers, signed certificates confirming corporate ownership of the identified collateral and affirming the correctness of the Agreement's representations.

The Agreement was amended in 2013. As relevant here, it reduced the term loan amount to $327,775.77 but increased the line of credit to $2,550,000.

The Batemans and Ms. Decker unconditionally guaranteed the Borrowers' obligations under the Agreement and reaffirmed the guarantees whenever the loan documents were amended.

As is customary in asset-based lending, Borrowers' ability to draw on the line of credit was limited by the amount of their eligible accounts and inventory. Thus, in connection with each draw, GemCap required submission of a borrowing base certificate that identified the asset basis for borrowing and was certified by a responsible officer. Mr. or Ms. Bateman signed most of the borrowing base certificates.

Borrowers were also required to provide monthly certificates listing all equipment in their possession. They delivered many; Mr. or Ms. Bateman signed all of them, and Mr. Bateman actively participated in their preparation.

But Borrower's business operations were not successful; they were unable to make required payments in 2015 and defaulted under the Agreement. Unknown to GemCap, however, there were also two additional relevant defaults already in existence. First, at the direction of the Batemans and Ms. Decker, Borrowers had diverted $771,669 from the lockbox account; GemCap never received these proceeds. Second, Borrowers had provided inflated borrowing base certificates that overstated receivables for years. The initial misrepresentation was allegedly inadvertent, but the Borrowers and the Batemans discovered it

6

shortly thereafter and neither corrected it nor otherwise informed GemCap. Indeed, over a two-year period, they repeated the misrepresentation 102 times, and, in reliance on the false borrowing base certificates, GemCap lent an additional $2,049,179.10.

Unaware of these additional serious defaults, GemCap provided formal notice of default based on the missed payments but then entered into a forbearance agreement.[3] In it, Borrowers, the Batemans, and Ms. Decker acknowledged the payment default, reaffirmed their respective obligations, and confirmed their representations and warranties.

But forbearance was short-lived; GemCap discovered the additional defaults. In December 2015, GemCap filed suit in state court against the Batemans, Ms. Decker, and Borrowers. The state court appointed a receiver but allowed Mr. Bateman to resume management under the receiver's supervision. It also deferred enforcement proceedings after partial summary judgment to allow Borrowers an opportunity to refinance their obligations.

Eventually, GemCap became dissatisfied with both the state court proceedings and the receiver's performance. So it (and others) filed involuntary chapter 11 petitions against Naturescape and Mountain

---

[3] In its findings, the bankruptcy court did not identify when GemCap discovered the additional defaults. During trial, GemCap submitted testimony that it did not discover them until it audited Mountain Thunders' books and records in 2015 and that it did not know about them when it signed the forbearance agreement.

Thunder. The bankruptcy court entered orders for relief and also ordered appointment of a trustee, who shut down Borrowers' business operations in January 2017.

GemCap and the trustee entered into a purchase agreement allowing GemCap to acquire its collateral. The bankruptcy court approved the transaction over objections from Naturescape, the Batemans, and Ms. Decker, and GemCap designated Palani Farms, LLC as the acquiring entity.

But an order approving the sale did not lead to an orderly turnover of collateral. As the bankruptcy court put it: "The Batemans [took] many actions to interfere with GemCap's effort to enforce its rights in its collateral. These actions began around the time that the state court appointed the receiver, and continued and accelerated when the bankruptcy trustee sought approval of the Asset Purchase Agreement."

GemCap responded to this interference with adversary proceedings and requests for injunctive relief against the Batemans and Ms. Decker (and others).[4] After a hearing, the bankruptcy court entered a temporary restraining order:

> prohibiting the [] Batemans and Ms. Decker from using, transferring, or physically moving any of the purchased assets, or interfering with the sale of the assets, and requiring them to

---

[4] GemCap filed adversary proceedings in both Naturescape and Mountain Thunder's cases; the parties and bankruptcy court treated them as consolidated.

turn over to GemCap the domain and website www.mountainthunder.com, emails, telephone numbers associated with the Borrowers, and customer lists, to give GemCap access to the wet mill portion of the Kaloko Property, and to promptly identify the location and condition of all assets which the defendants claimed were their personal property.

The temporary restraining orders did not yield compliance. Thus, after a two-day evidentiary hearing, the bankruptcy court issued preliminary injunctions. The injunctions required the Batemans and Ms. Decker very specifically:

- "to, immediately upon entry of this preliminary injunction, (I) comply with Sale Order . . ., (ii) turnover possession, custody, control, title and (if applicable) passwords, lock combinations, keys or other information needed for access and use for any and all items identified in the Asset Schedule, . . . (viii) transfer all collateral as identified in Section 5 of the Loan and Security Agreement . . .";

- "to immediately permit GemCap or its designee full, unfettered, and continuing unimpeded access to the Kaloko Property, including, but not limited to, the orchard, driveway and area around all offices and commercial buildings, the Kaloko Wet Mill, and the Kainaliu Property;"

- "to identify the location and condition of inventory, and turnover all of the assets on the Asset Schedule, within three (3) days of the entry of this preliminary injunction;" and

- "to immediately identify the location and condition of inventory and turnover all assets any Enjoined Party contested as a Purchased Asset, including, without limitation, all equipment, machinery, tools, merchandise, inventory, cash, accounts, merchant accounts, Square.com accounts, roasted and unroasted coffee, and coffee cherry[.]"

The bankruptcy court also enjoined them "from interfering with any access to any part of the Kaloko Property (except the personal residences of Trent and Lisa Bateman and Brooke Decker), Kainaliu Property, and any other property used in connection with or otherwise related to the Business and from interfering with GemCap or [its designee's] possession of any of the assets on the Asset Schedule located on any of those properties, including Kainaliu."

While the tumult in the Borrowers' bankruptcies was evolving, Mr. Bateman filed his own chapter 7 petition. GemCap filed a claim based on his guaranty of the Borrowers' obligations and damages for conversion and contempt and commenced an adversary complaint seeking a nondischargeability determination as to the entire amount.

Leading up to a joint trial in the adversary proceedings commenced by GemCap in the three bankruptcy cases, the parties submitted declarations in lieu of direct and rebuttal testimony. The bankruptcy court then held a four day evidentiary hearing. Ms. Bateman and Ms. Decker

10

neither provided a declaration nor testified at trial.

The bankruptcy court issued findings of fact and conclusions of law.

As to the request for sanctions based on noncompliance with the temporary restraining order and the preliminary injunction, the bankruptcy court found that the Batemans and Ms. Decker knew about its orders, could have complied with them, but failed to do so because they did not provide full, unfettered, and continuing, unimpeded access to the Kainaliu Property and otherwise interfered with the turnover of equipment collateral. This lack of required cooperation made it impossible for GemCap or its designee to recover collateral worth $262,330.

As for Mr. Bateman's specific interference, we quote the bankruptcy court's decision extensively:

> Other items of GemCap's collateral are located on the Kainaliu Property. When the state court receiver was in possession of the Kainaliu Property, he would not allow Palani Farms and GemCap access unless his representative and a representative of the Batemans was present. GemCap was able to enter the Kainaliu Property once and removed items that the receiver's representative believed were included in GemCap's collateral. But the receiver would not allow GemCap to remove other items claimed by GemCap and Palani Farms because the Batemans refused to meet again for a coordinated access to the property. These assets . . . were part of GemCap's collateral, are included in the purchased assets, remain on the Kainaliu Property, and belong to GemCap and Palani Farms.

> Mr. Bateman testified that all of the items left on the Kainaliu

11

Property 'has [sic] considered abandoned and either has been or will be removed or destroyed." This statement about abandonment is factually false (GemCap and Palani Farms never voluntarily gave up their rights in those items) and legally unsustainable (Mr. Bateman has offered no authority for the proposition that these items should be deemed abandoned). If any of these items have been destroyed, Mr. Bateman is accountable.

The bankruptcy court thus held the Batemans and Ms. Decker in contempt. But it limited sanctions to the value of the equipment that they put beyond GemCap's reach, $262,300, and made the sanction award subject to reduction if the Batemans or Ms. Decker turned over equipment in the future. It also concluded that the sanction was nondischargeable in Mr. Bateman's bankruptcy case.

It also concluded that GemCap's claim against Mr. Bateman was otherwise nondischargeable. Dischargeability under § 523(a)(2) was appropriate in part because he provided false borrowing base certificates that caused GemCap to lend an additional $2,049,179.10 to Borrowers. It also found and concluded that Mr. Bateman's diversion and conversion of $771,669 of lock box cash collateral warranted nondischargeability under § 523(a)(6).

The bankruptcy court entered separate, final judgments in both adversary proceedings. The Batemans and Ms. Decker timely appealed.

12

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 157(b)(2)(A), (E), and (I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion in finding Appellants in civil contempt and imposing sanctions?

Did the bankruptcy court clearly err when it found that Mr. Bateman provided false borrowing base certificates and diverted $771,669 from the lockbox accounts?

## STANDARD OF REVIEW

"We review for abuse of discretion the bankruptcy court's finding of civil contempt and imposition of sanctions." *Kismet Acquisition, LLC v. Diaz-Barba (In re Icenhower)*, 755 F.3d 1130, 1138 (9th Cir. 2014). "We review for clear error the bankruptcy court's findings of fact in connection with the civil contempt order." *Id.*

Whether a claim is excepted from discharge under § 523(a) presents mixed issues of law and fact. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). Mixed questions of law and fact are usually reviewed *de novo*. *Id.* But in the context of a dischargeability analysis, the bankruptcy court's factual findings are reviewed under the clearly erroneous standard. *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996); *see In re Su*, 290 F.3d at 1142.

13

"Clearly erroneous review is significantly deferential, requiring that the appellate court accept the [trial] court's findings absent a definite and firm conviction that a mistake has been made." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (internal quotation marks omitted); *see Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. *United States v. Elliott*, 322 F.3d 710, 714 (9th Cir. 2003). Put differently, a factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Appellants argue that the bankruptcy court erred in three respects: first, in finding Ms. Bateman and Ms. Decker in contempt; second, in finding Mr. Bateman in contempt; and, third, in finding that Mr. Bateman provided false borrowing base certificates and diverted money from the lockbox. We disagree.

**A. The bankruptcy court did not clearly err in finding Ms. Bateman and Ms. Decker in contempt and did not abuse its discretion in imposing sanctions.**

"Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming

14

from the defendant's noncompliance with an injunction." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019); *cf. In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) ("Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."). Bankruptcy courts have authority to hold parties in contempt. *Taggart*, 139 S. Ct. at 1801.

To find a party in civil contempt, the movant must prove by clear and convincing evidence that the alleged contemnor violated a specific and definite order of the court. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190–91 (9th Cir. 2003). The bankruptcy court must also find that the contemnor had sufficient notice of the order's terms and the fact that sanctions would follow a failure to comply. *Hansbrough v. Birdsell (In re Hercules Enters., Inc.)*, 387 F.3d 1024, 1028 (9th Cir. 2004). Whether the contemnor violated a court order is not based on subjective beliefs or intent in complying with the order, "but [based on] whether in fact [the] conduct complied with the order at issue." *In re Dyer*, 322 F.3d at 1191 (citation omitted). The standard for evaluating civil contempt, thus, is an objective one. *Taggart*, 139 S. Ct. at 1804. It asks whether there was a "fair ground of doubt" about whether the conduct was proper. *Id.*

Once a contemnor's noncompliance with a court order is established, the burden shifts, and it must produce sufficient evidence of its inability to

15

comply to raise a question of fact. *In re Icenhower*, 755 F.3d at 1139. This is because a "contemnor in violation of a court order may avoid a finding of civil contempt only by showing it took all reasonable steps to comply with the order." *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016).

And, under § 105(a), a bankruptcy court may both hold a party in civil contempt and impose compensatory or coercive sanctions. *In re Dyer*, 322 F.3d at 1189–90; *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506–07 (9th Cir. 2002); *Nash v. Clark Cnty. Dist. Attorney's Office (In re Nash)*, 464 B.R. 874, 880 (9th Cir. BAP 2012).

On appeal, Ms. Bateman and Ms. Decker argue that no evidence implicated them in any failure to provide access to collateral or showed that they interfered with the asset transfer. At oral argument, they argued that GemCap failed to meet its evidentiary burden. But Ms. Bateman and Ms. Decker miss the point.

In reviewing a determination of contempt, we first ask whether there was a clear and definite order—there was: the preliminary injunction. Appellants do not dispute that the preliminary injunction required them to provide GemCap or its assignee with full access to specific real property and to identify and turnover specific assets.

Second, we ask whether there was clear and convincing evidence that Ms. Bateman and Ms. Decker knew about the preliminary injunction. The

16

bankruptcy court found that they did; we agree that the evidentiary record supports this conclusion.

Next, we consider whether Ms. Bateman and Ms. Decker knew that the preliminary injunction applied to their actions or inactions. They assert that they cannot be held in contempt because there was no testimony establishing that they actively interfered with the transfer of assets. But this argument ignores that the preliminary injunction required their *active* participation in identifying and *turning over* the assets. Put simply, the order required action, and they did not act as required.

At oral argument, Ms. Bateman and Ms. Decker's counsel suggested that GemCap failed to meet its burden of going forward because it did not provide evidence of active interference with asset turnover. But this evidence was unnecessary; the bankruptcy court found, based on clear and convincing evidence, that Ms. Bateman and Ms. Decker failed to act as required by the preliminary injunction; this failure to act, standing alone, is noncompliance with the preliminary injunction.

As a result, the burden then shifted to Ms. Bateman and Ms. Decker to show that they were unable to comply or substantially complied with the preliminary injunction. But they provided no such evidence in connection with the trial. They did not even testify. So we discern no error in the bankruptcy court's conclusion that they were in contempt of the preliminary injunction order.

And finally, Ms. Bateman and Ms. Decker do not dispute the bankruptcy court's calculation of damages. To the extent Ms. Bateman or Ms. Decker yet acts in good faith and assists in the turnover of the equipment, they can seek a reduction in the amount of the sanction. The bankruptcy court's judgment of contempt, thus, amounts to more than just a civil compensatory monetary award—it is also a civil coercive award, designed to induce compliance. Appellants conceded this at oral argument.

In sum, we conclude that the bankruptcy court did not err when it held Ms. Bateman and Ms. Decker in contempt and imposed damages.

**B.     The bankruptcy court did not clearly err in finding Mr. Bateman in contempt and did not abuse its discretion or clearly err in imposing nondischargeable sanctions.**

The bankruptcy court held Mr. Bateman in contempt and entered a corresponding nondischargeable judgment against him for $262,300.

Our analysis above applies equally here. The preliminary injunction was a specific and definite order, Mr. Bateman knew about it, and the preliminary injunction required Mr. Bateman to *actively* assist in the turnover of equipment and assets. Part of Mr. Bateman's appellate argument reduces to the supposition that he could do nothing and avoid contempt. But that was not an option for Mr. Bateman. And Mr. Bateman does not contest that GemCap was unable to acquire certain assets or that they were worth $262,300.

Mr. Bateman also argues, on appeal, that GemCap's own witness

conceded on cross-examination, first, that he never asked Mr. Bateman where the various pieces of equipment were and, second, that he also recalled that Mr. Bateman asked GemCap to remove assets from the property. This, he supposes, absolves him of liability because he made an effort to comply. And at oral argument, Mr. Bateman's counsel emphasized that Mr. Bateman was displaced by both the state court receiver and a bankruptcy trustee.

We acknowledge that Mr. Bateman presented and marshaled evidence suggesting that he provided limited cooperation. The bankruptcy court noted this cooperation, but then found that it was insufficient and provided in order to mask actions inconsistent with the preliminary injunction. As a result, Mr. Bateman's appellate argument fails—his facial compliance efforts do not amount to a showing that he took all reasonable steps to comply with the preliminary injunction. *Kelly*, 822 F.3d at 1096. And as with Ms. Bateman and Ms. Decker, Mr. Bateman does not dispute the amount of the sanction and has the ability to reduce it through post-judgment turnover of assets.

Finally, Mr. Bateman does not dispute the bankruptcy court's accompanying conclusion that the $262,300 sanction is appropriately nondischargeable in his bankruptcy case. We deem the matter waived. *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009).

As such, we conclude that the bankruptcy court did not err in holding

19

Mr. Bateman in contempt, imposing sanctions, and concluding that the sanction was nondischargeable.

**C.      The bankruptcy court did not err in entering a $2,820,848.10 nondischargeable judgment against Mr. Bateman.**

Mr. Bateman next disputes the determination that an additional $2,820,848.10 of GemCap's claim was nondischargeable. The bankruptcy court based this on its finding, first, that Mr. Bateman prepared false borrowing certificates that GemCap relied on and, second, that Mr. Bateman diverted $771,669 from the lockbox.

Again, Mr. Bateman does not dispute the bankruptcy court's legal conclusions that the sums are nondischargeable under § 523 in Mr. Bateman's bankruptcy case. We treat any challenge to this legal conclusion as waived. Instead, he focuses on the factual findings.

Mr. Bateman's appellate argument is not persuasive; he reproduces substantial portions of his direct testimony, notes that he was cross-examined, and then states that his testimony was consistent with his declaration and was thus credible. He continues:

> There was absolutely no reason identified by the Bankruptcy Court that it should have been disregarded.  Yet, for some unknonwn [sic] reason, the Bankruptcy Court seems to have completely disregarded his testimony, and instead rubber-stamped the unsupported allegations asserted by GemCap, that Trent Bateman prepared fraudulent borrowing base certificates and fraudulently diverted GemCap's funds.  In fact, the Batemans never prepared the borrowing base certificates. Those

certificates were always prepared by GemCap. And, when a mistake was made in inventory, Trent Bateman immediately notified GemCap of that error. That is far from fraud.

In disregarding Trent Bateman's testimony and instead rubber-stamping GemCap's unsupported allegations, the Bankruptcy Court abused its discretion . . . .

Opening Br. at 15–16. This is far from convincing.

To start, Mr. Bateman's framing of his argument is nearly self-defeating. As the Supreme Court once explained: "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson*, 470 U.S. at 575.

Mr. Bateman is particularly flummoxed by the bankruptcy court's credibility finding: he concedes that the bankruptcy court found him not credible, and he allegedly does not understand why. But his chagrin is of no moment; a "trial court's finding that a witness is not credible is entitled to special deference." *Allen v. Iranon*, 282 F.3d 1070, 1078 n.8 (9th Cir. 2002) (citing, *Anderson*, 470 U.S. at 573); *see Kirola v. City & Cty. of San Francisco*, 860 F.3d 1164, 1179–82 & n.7 (9th Cir. 2017). Our review of the record and the bankruptcy court's decision discloses ample evidence in support of this finding: the bankruptcy court found that Mr. Bateman testified falsely

21

multiple times. Findings of Fact & Conclusions of Law at 9 ("Mr. Bateman testified . . . . This testimony was false. . . . Mr. Bateman's willingness to say whatever suits his family's interests at the moment makes his testimony incredible."), 18 ("Mr. Bateman took the position (indeed, he testified under oath) . . . . Mr. Bateman's testimony was false. . . . Mr. Bateman changes his story intending to use the domain name for the benefit of himself and his family . . . ."), 19 ("Mr. Bateman contended that . . . . These claims were false . . . ."), and 21 ("Mr. Bateman testified that . . . . This statement about abandonment is factually false . . . and legally unsustainable . . . .").

Mr. Bateman's particular assertion that he never prepared borrowing base certificates also provides no basis for reversal. He relies exclusively on his direct testimony that "Lisa and I have NEVER done a borrowing base." This does not amount to a showing that the bankruptcy court clearly erred. First, this is contradicted by the record; the exhibits presented at trial include borrowing base certificates signed by both Mr. and Ms. Bateman and support the bankruptcy court's factual conclusions. And further, the bankruptcy court also found that Mr. Bateman *directed* Borrowers to submit false borrowing certificates to GemCap. This finding is adequately supported by third party testimony in the record.

Mr. Bateman's attempt to downplay the magnitude of the borrowing basis certificate error is also insufficient. He argues that the mistake was not "unusual" and a "non-issue." But the bankruptcy court found otherwise.

22

And this finding was supported by other testimony in the record.

Finally, other than reproducing Mr. Bateman's direct testimony on the matter, Mr. Bateman never discusses the diversion of the funds from the lockbox beyond a categorical statement that the bankruptcy court erred in so finding. This is not enough to dispute the finding. *Cf. Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010) ("[W]e won't consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief. Applying this standard, we have refused to address claims that were only argued in passing or that were bare assertions . . . with no supporting argument.") (internal quotation marks and alterations omitted). In any event, the finding was adequately supported by testimony in the record.

In short, Mr. Bateman does not adequately challenge the bankruptcy court's factual findings. They have support in the record. And he admits that the bankruptcy court believed GemCap's witnesses and disbelieved him. He then fails to discredit GemCap's witnesses by reference to anything other than his discredited testimony. He fails to show clear error.

## CONCLUSION

Based on the foregoing, we AFFIRM.