**HOAG MEMORIAL HOSPITAL,**
Plaintiff,

v.

**MANAGED CARE ADMINISTRATORS, a California Corporation; The Robert Mayer Corporation Employee Benefit Plan, a Welfare Benefit Plan under ERISA; The Robert Mayer Corporation, a California Corporation; Ocean View Estates Management, Inc., a California Corporation; The Waterfront Hilton, a California Corporation; The Waterfront, Inc., a California Corporation; and Does 1 through 100, Defendants.**

**No. CV92–5761–HLH (Sx).**

United States District Court,
C.D. California.

May 12, 1993.

---

David S. Fredricksen, Mary A. Estante, Bennett & Kistner, Long Beach, CA, for plaintiff.

Thomas F. Newmeyer, Donald F. Gaffney, Newmeyer & Dillion, Newport Beach, CA, for defendant Managed Care Administrators.

Belinda K. Orem, Paul, Hastings, Janofsky & Walker, Los Angeles, CA, for all other defendants.

## MEMORANDUM OPINION

HUPP, District Judge.

Defendants the Robert Mayer Corporation, the Robert Mayer Corporation Employee Benefit Plan, Ocean View Estates Management, Inc., the Waterfront, Inc., and the Waterfront Hilton moved to dismiss Plaintiff Hoag Memorial Hospital's ("Hoag Memorial") First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Defendants argued that the FAC, which alleges fraud and deceit, negligent misrepresentation, and estoppel is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.* For the reasons set forth below, the Court denied Defendants' motion and by minute order, remanded the case to the Superior Court of the State of California for Orange County. This memorandum opinion sets forth the Court's reasoning.

## I. BACKGROUND

### A. *Standard of Review*

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the Court assumes all of the factual allegations in the complaint as true, and makes all reasonable inferences in favor of the opposing party. *Sun Savings & Loan Association v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). A court can grant a 12(b)(6) motion to dismiss only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990).

### B. *Facts Alleged in Complaint*

Brian Lowell Blaes ("Blaes"), an employee of Defendant's, was a participant in the Robert Mayer Corporation Employee Benefit Plan ("the Plan"). On December 16, 1990, while covered by the Plan, Blaes was seriously injured in an automobile accident which left him in a coma. He was transported to Harbor–UCLA Medical Center, and five days later, from there to Hoag Memorial Hospital ("Hoag Memorial"). Blaes died from these injuries on January 7, 1991, never having regained consciousness.

Pursuant to customary business practices, Hoag Memorial contacted Defendants to verify that Blaes was in fact insured and that Plaintiff would receive payment for care and treatment provided to Blaes for the period of December 21, 1990 to January 7, 1991. Defendants allegedly assured Plaintiff that Blaes was covered and that Plaintiff would receive the policy benefits. It is further alleged that at no time did Defendants tell Plaintiff that: (1) Blaes' right to receive benefits was subject to forfeiture or reduction; (2) Blaes' coverage was contingent upon further investigation of facts; and (3) Defendants would conduct a post-claim investigation to determine the availability of benefits to Blaes. If Defendants had made such representations, Hoag would have either transferred Blaes to another medical facility or sought reimbursement from other sources. Hoag claims that based on Defendants' assurances of coverage, it admitted Blaes and provided the necessary treatment. The cost of this treatment totalled approximately $161,266.89.

On May 3, 1991, Defendant Managed Care Administrators informed Hoag Memorial that it was denying its claim for Plan benefits based on a benefit exclusion contained in the Plan Document and Summary Plan Description for injuries arising from illegal activities. The alleged illegal activity was drunk driv-

ing; Blaes' blood alcohol level at the time of the accident was .226%, well above the legal limit of .08%.

The Plan Administrator denied an appeal filed by Plaintiff on August 26, 1991. Subsequently, Plaintiff filed suit in Superior Court of the State of California for Orange County for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and deceit, negligent misrepresentation, and estoppel. Defendants removed the case to this Court, claiming that the case arose under ERISA. Defendants then moved to dismiss the complaint for failure to state a claim upon which relief can be granted, arguing that all of the claims were preempted by ERISA. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Paragraph 13 of Plaintiff's original complaint suggested that it may have been suing as an assignee of Blaes' *under* the Plan.[1] However, at the October 26, 1992 hearing of Defendants' Motion to Dismiss, Plaintiff disclaimed suing on the assigned rights of Blaes. Since Hoag's claims were not derivative of Blaes', the Court believed that Hoag might be able to maintain its own unpreempted state law claims. Thus, the Court granted Defendants' Motion to Dismiss and gave Plaintiff ten days leave to amend. The Court also directed the parties to show cause why this action should not be remanded to state court for lack of federal jurisdiction in the event that only unpreempted state law claims were alleged.[2]

Plaintiff filed an FAC alleging: (1) fraud and deceit; (2) negligent misrepresentation; and (3) estoppel. Plaintiff deleted any language which could suggest that it was suing under the Plan on Blaes' assigned rights. Instead, the FAC was carefully crafted to assert claims based solely on Defendants'

alleged misrepresentations of coverage. Defendants moved again to dismiss the FAC, arguing that ERISA preempted the claims since they "related to" the Plan. *See Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

The issue, then, is whether the state law claims alleged in the FAC can be maintained by Plaintiff Hoag as a non-ERISA entity—in which case the action must be remanded to state court for lack of federal jurisdiction—or whether the claims are preempted by ERISA. While the Fifth, Sixth and Tenth Circuits have expressed divergent views on this issue, there is no Ninth Circuit authority on point.

## II. ANALYSIS

### A. *Whether Hoag's Claims Relate To The Plan*

In order to "establish pension plan regulation as exclusively a federal concern," Congress included a broad preemption provision in ERISA. *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). Thus, Section 514(a) of ERISA states that the provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). The Supreme Court has given the phrase "relate to" an expansive meaning, holding that a state law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). *See also Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Pilot Life Ins. Co., supra.*

Despite the breadth of this preemption provision, however, the Supreme Court has

---

1. Paragraph 13 reads, in pertinent part:

   By virtue of the contract of hospital and medical insurance issued to Blaes by Defendants, and each of them, Plaintiff became entitled to receive payment for hospital and medical services rendered to Blaes. Said contract of insurance provided that if Blaes became incapacitated or incapable of signing a valid as-

signment of insurance benefits to his medical and hospital providers, such as Plaintiff, said providers would be entitled to receive direct payment for said services.

2. Since the parties are not diverse, ERISA is the sole basis upon which Defendants removed the action from state court.

held that not all state law claims are preempted. *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). Certain "run-of-the-mill state law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" are not subject to ERISA's preemptive power. *Id.*, at 833, 108 S.Ct. at 2187. Defendants argued that Plaintiff's claims are not "run-of-the-mill" state law claims unaffected by ERISA, but rather are in fact ERISA claims merely dressed up in state law clothes. These claims, Defendants contended, concern the administration of the Plan, and as such "relate to" the Plan.

This Court rejects Defendants' contentions and finds that Plaintiff's claims do not "relate to" the Plan. Plaintiff is not an ERISA plan participant or beneficiary who is seeking to recover for improper processing of a claim for plan benefits or for breach of contract. *See, e.g., Pilot Life, supra.* Rather, Plaintiff is a third-party health care provider suing to recover on an *independent* obligation of the Plan to pay for care and treatment that was created when the Plan Administrator allegedly represented to the health care provider that the participant, Blaes, was covered. Thus, contrary to the Defendants' argument, this suit does not involve the administration of the Plan. The Fifth and Tenth Circuits' reasoning in *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir.1990), and *Hospice of Metro Denver, Inc. v. Group Health Ins.*, 944 F.2d 752 (10th Cir.1991) is persuasive on this point. The Court declines to follow the Sixth Circuit's decision in *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir.1991).

### B. *Memorial Hospital and Hospice of Metro Denver*

Both *Memorial Hospital* and *Hospice of Metro Denver* are factually similar to the case at bar. In *Memorial Hospital*, the wife of an employee who was covered by group health insurance sought treatment at Memorial Hospital. After receiving verification of coverage from the employer, the Hospital provided the care at a cost of $110,829.40. The employee and his wife assigned their

benefits under the insurance policy to Memorial. However, when Memorial attempted to collect the benefits, the employer denied Memorial's claim, stating that the wife was not in fact eligible.

Memorial subsequently filed suit in Texas state court, alleging various tort, statutory and contract claims. As in the case at bar, defendants removed the suit to federal court, claiming that it arose under ERISA. Also as in the instant case, defendants filed a motion to dismiss for failure to state a claim, arguing that ERISA preempted Memorial's claims. The district court dismissed Memorial's contract and statutory claims, finding that these causes of action were preempted by ERISA. However, the district court also found that Memorial brought its claims for negligent misrepresentation and estoppel in its independent status as a third-party health care provider, and not as an assignee of the benefits under the ERISA plan. Accordingly, the district court remanded these claims to state court. Memorial appealed the court's decision to dismiss its breach of contract and statutory claims.

In analyzing the preemption question, the Fifth Circuit found that two common characteristics ran through cases where courts held that ERISA preempted state law claims: (1) the state law claims concerned areas of exclusive federal concern, such as the right to receive benefits under an ERISA plan; and (2) the state law claims directly affected the relationship among the traditional ERISA entities such as the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Memorial*, 904 F.2d at 245. The Fifth Circuit determined that the case before it did not involve either concern.

First, the Fifth Circuit noted that Congress enacted ERISA in order to protect the interests of employees and their beneficiaries under employee benefit plans. Memorial's claim for unfair and deceptive trade practices did not infringe upon an area which Congress sought to be exclusively regulated by ERISA. *Memorial*, 904 F.2d at 247. Second, the Fifth Circuit noted that as a non-ERISA entity, Memorial did not have the right to sue under ERISA. Thus, unlike a participant or beneficiary's claim for breach

of contract, Memorial's state statutory claim did not involve the relationship among the traditional ERISA entities. The Fifth Circuit concluded that Congress most likely did not intend for ERISA to govern the dealings between a plan fiduciary and a third-party health care provider. *Memorial*, 904 F.2d at 250. The Fifth Circuit reasoned:

> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of non-payment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.

*Id.* at 246.

Thus, Memorial's cause of action for unfair and deceptive trade practices was ordered remanded to state court.

The Tenth Circuit relied on *Memorial Hospital* in reaching the same conclusion in *Hospice of Metro Denver, supra.* As in *Memorial Hospital* and the case at bar, the factual scenario in *Hospice of Metro Denver* is virtually identical. Hospice admitted the infant son of an employee who was covered by group health insurance after receiving verification of coverage from the health insurance provider, Blue Cross. When Blue Cross subsequently denied coverage, Hospice brought suit in state court. Blue Cross removed the case to federal court and filed a motion to dismiss Hospice's claims of promissory estoppel, quantum meruit, and claims as a third-party beneficiary as preempted by ERISA. The district court granted Blue Cross' motion to dismiss, but the Tenth Circuit reversed this decision. Hospice's promissory estoppel claim, the Tenth Circuit rea-

soned, did not involve the administration of the plan, the processing of a covered claim, or the rights of an ERISA participant or beneficiary. *Hospice of Metro Denver*, 944 F.2d at 755. Thus, the claim did not "relate to" the Plan and was not preempted.

As in *Memorial Hospital* and *Hospice of Metro Denver*, Hoag Memorial's claims to recover promised payment from the employer and the administrator of the Plan must be distinguished from an action by an ERISA participant or beneficiary to recover benefits under the terms of the plan. It is this Court's opinion that ERISA's preemption provision was intended to preclude the latter, not the former. In effect, when insurance companies and plan administrators verify coverage to third-party health care providers, they are creating an independent obligation of the plan to pay for the services rendered in reliance thereon. In this sense, the case cannot be divorced from the commercial realities and consequences of the scenario that it presents. Indeed, these factors provided in part the basis for the Fifth Circuit's decision in *Memorial Hospital*. Hospitals routinely contact plan administrators before admitting a patient in order to verify coverage. Due to hospitals' limited funds for indigent care, if a hospital is told that no coverage exists, the hospital either must obtain funds from another source or transfer the patient to another facility. Thus, if a plan administrator or insurance company unqualifiedly verifies coverage to a health care provider, it should realize that either it is consenting to the payment of plan benefits or it should "accept [the] consequences for a false representation of coverage that the provider reasonably relied upon." *Memorial Hospital*, 904 F.2d at 246.

As the Fifth Circuit reasoned, if a health care provider provides care and treatment based upon a plan administrator's representation that the patient is covered, and the plan subsequently denies coverage, who should bear the risk of non-payment—the innocent provider or the insurance company which erroneously or carelessly represented that coverage existed? *Id.* If health care providers are unable to pursue a remedy either under ERISA, because they are an un-

enumerated party, or outside of ERISA, because their state law claims are preempted by ERISA, they may begin to require upfront payment by the participant or beneficiary rather than accept the risk of nonpayment. *Memorial Hospital,* 904 F.2d at 247; *Hospice of Metro Denver,* 944 F.2d at 755. This result would obviously fly in the face of Congress' intent in enacting ERISA; namely, to protect the interests of employees and their beneficiaries.

Based on the foregoing analysis, this Court declines to adopt the reasoning of the Sixth Circuit as expressed in *Cromwell v. Equicor–Equitable HCA Corp., supra.* In *Cromwell,* which addresses the same factual scenario as *Memorial Hospital, Hospice of Metro Denver,* and the case at bar, the Sixth Circuit held that a home health care provider's claims for breach of contract, promissory estoppel, negligence, and breach of good faith were preempted by ERISA in that they were essentially claims for the recovery of ERISA plan benefits. The Court decided that to allow this third-party provider's claims would extend coverage beyond the terms of the plan, thus affecting the relationship between the plan's principals. *Cromwell,* 944 F.2d at 1276. Judge Jones dissented, citing *Memorial Hospital* for his contention that Cromwell's claims did not "relate to" the Plan. These claims arose, Judge Jones wrote, because the plan administrator's misrepresentation resulted in an independent obligation of the plan to pay for the care and treatment provided.

### C. Christopher *and* Hermann Hospital II *Do Not Govern This Case*

Defendants argue that *Memorial's* analysis has been questioned by the more recent Fifth Circuit decisions of *Christopher v. Mo-*bil Oil Co., 950 F.2d 1209 (5th Cir.1992) and *Hermann Hospital v. MEBA Medical & Benefits Plan* ("*Hermann II*"), 959 F.2d 569 (5th Cir.1992). However, contrary to Defendants' assertions, these cases do not overrule or question *Memorial,* and both are distinguishable from the case at bar.

*Christopher* can be distinguished from *Hoag* on two grounds. First, *Christopher* involved the traditional ERISA entities, as it was a suit by a group of employees against their employer over an ERISA-governed pension plan. Here, Hoag is not claiming that it is an assignee; rather, it is a non-ERISA health care provider. Second, the Fifth Circuit in *Christopher* held that the state law claims were preempted because the conduct complained of related directly to the operation of an ERISA plan. In contrast, the conduct complained of here—negligent misrepresentation—does not involve the operation or administration of an ERISA plan. Contrary to what Defendants contend, *Christopher* does not disagree with *Memorial.*[3]

Neither does *Hermann II* question or overrule *Memorial.* Hermann Hospital admitted the spouse of a participant in MEBA's health plan for cancer treatment. The woman stayed in the hospital until her death. Upon being admitted to the hospital, the woman signed an assignment of benefits to Hermann Hospital, and MEBA verified coverage. MEBA subsequently refused to pay, however, based on an anti-assignment clause in the plan. Hermann Hospital brought state law claims of negligent misrepresentation and fraud against MEBA. The district court dismissed the claims, finding that they were preempted by ERISA.

On the second round of appeals in the case, Hermann Hospital argued that even though it was an assignee,[4] it had independent stand-

---

3. Indeed, *Christopher's* explanatory parenthetical following *Memorial's* citation supports Hoag's argument. It reads, "observing that preemption is proper where the state law claims address areas of exclusive federal concern, and where they directly affect the relationship among the traditional ERISA entities." *Christopher,* at 1219. As the Court has found, Hoag's state law claims do not address areas of exclusive federal concern, and do not directly affect the relationship among the traditional ERISA entities.

4. On appeal from the district court's ruling, *Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988), the Fifth Circuit held that although Hermann Hospital had no standing to sue as a non-enumerated party, it would have derivative standing as an assignee. The court therefore affirmed the district court's dismissal of the state law claims and remanded the case to district court to determine whether there was a valid assignment. On remand, the district court determined that there was not a

ing to sue on the state law claims, and these should consequently not be preempted. The Fifth Circuit panel rejected this contention. In so doing, however, it did not state that *Memorial* was no longer good law—it simply stated that neither *Mackey* nor *Memorial Hospital* constituted an exception to the application of the law of the case doctrine on the preemption issue.[5] *Memorial's* reasoning is still persuasive.

### D. St. Mary *Is Similarly Inapplicable*

Defendants argued that a Central District case, *St. Mary Medical Center v. Cristiano,* 724 F.Supp. 732 (C.D.Cal.1989), is applicable to the case at bar. In that case, the health care provider sued the employer, insurer and plan administrator for detrimental reliance and negligent misrepresentation. The parties brought cross summary judgment motions. The district court granted defendants' summary judgment motions, finding that there was no evidence that an insurance company had ever given St. Mary's assurances that the patient was covered.

*St. Mary* differs from the case at bar in several respects. First, as the opponent of defendants' summary judgment motion, St. Mary's had the burden of producing evidence to show that defendants gave misrepresentations of coverage. Having failed to offer any evidence on this issue, St. Mary's necessarily lost. By contrast, this Court is ruling on a 12(b)(6) motion to dismiss, for which the Court must accept as true the allegations of the FAC that Defendants assured Hoag that it would be paid for the care and treatment provided to Blaes. Additionally, and more importantly, St. Mary's was found to have standing under ERISA as an assignee. Finally, *St. Mary* was decided before *Memorial Hospital* and *Hospice of Metro Denver,* cases where the fact patterns are identical to the

scenario in this case, and thus where the analysis is particularly applicable. Accordingly, *St. Mary* does not govern this case.

### E. *Lack of Alternative Remedies*

Defendants argued that the fact that Hoag Memorial may be left with no remedy if the state law claims are preempted is irrelevant to the determination of preemption since preemption is not dependent on the availability of remedies. The Supreme Court stated in *Pilot Life* that the federal scheme of including some remedies and excluding others would be undermined if participants or beneficiaries could pursue state law remedies. *Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556. While this is true, the analysis shifts if the complainant is neither a participant nor a beneficiary but a third-party independent health care provider. In such a case, the third party's lack of remedies is certainly important. As the Fifth Circuit observed in *Memorial Hospital,* Congress struck a bargain in ERISA. While employees relinquished many former state and federal law rights, they gained many important protections under ERISA. However, third-party health care providers were never invited to partake in this compact. 904 F.2d at 249. They should not be denied the right to seek a remedy to redress their wrong.

## III. CONCLUSION

While the power of ERISA's preemptive provision is indeed strong, its sweep should not be allowed to ensnarl the claims of a non-ERISA entity suing under state law not to recover benefits under the terms of the plan but rather to recover for misrepresentations that it would be paid those benefits. Insurance companies and plan administrators must recognize the implications of their unqualified verifications of coverage. When

---

valid assignment. The appellate court reversed this finding in *Hermann II, supra.*

**5.** In *Hermann I,* the Fifth Circuit held that Hermann's state law claims were preempted by ERISA regardless of whether it brought them as an enumerated party or as an independent entity. This then became the law of the case. Hermann argued in *Hermann II* that *Mackey* and *Memorial Hospital* were contrary decisions made by a con-

trolling authority and applicable to the preemption question. The Fifth Circuit rejected this argument. While the Fifth Circuit discussed *Mackey,* explaining how it did not affect the preemption of the state law claims in *Hermann I,* it paid scant attention to *Memorial Hospital,* stating only that "the dicta in *Memorial Hospital* discussing *Hermann I* in light of *Mackey* ... does not change the law of the case." *Hermann II,* 959 F.2d at 579.

they assure third-party health care providers that the plan will pay for the cost of the care and treatment provided, they are creating independent obligations of the plan. Insurance companies and ERISA plans should not be immunized from suit for their careless or erroneous misrepresentations of coverage.

Hoag Memorial's claims for fraud and deceit, negligent misrepresentation, and estoppel are remanded to the Superior Court of the State of California for Orange County.