**PRIME HEALTHCARE SERVICES, INC. et al.**

v.

**HUMANA INSURANCE COMPANY, et al.**

**CV 16–01097–BRO (JEMx)**

United States District Court, C.D. California.

Filed 01/27/2017

---

11. However, both are deceased and unable to provide declarations or exhibits to shore up

Defendant's arguments.

John Oliver Liu, John E. Nuelle, Troy Allyn Schell, Oliver De Castro Tomas, Prime Healthcare Management Inc., Ontario, CA, for Prime Healthcare Services, Inc. et al.

Jennifer S. Romano, Crowell and Moring LLP, Los Angeles, CA, Samrah R. Mahmoud, Daniel M. Glassman, Crowell and Moring LLP, Irvine, CA, for Humana Insurance Company, et al.

## ORDER RE DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [32]

BEVERLY REID O'CONNELL, United States District Judge

## I. INTRODUCTION

Pending before the Court is Defendant Humana Insurance Company's ("Defendant" or "Humana") Motion to Dismiss Plaintiffs Prime Healthcare Services, Inc. et al.'s [1] ("Plaintiffs") Second Amended Complaint ("SAC"). (Dkt. No. 32 ("Motion" or "Mot.").) After considering the papers filed in support of and in opposition to the instant Motion, the Court deems these matters appropriate for resolution without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15. For the follow-

---

1. The Plaintiffs are: (1) Alvarado Hospital LLC *dba* Alvarado Hospital Medical Center; (2) Veritas Health Services, Inc. *dba* Chino Valley Medical Center; (3) Desert Valley Hospital, Inc. *dba* Desert Valley Hospital; (4) Prime Healthcare Services—Garden Grove, LLC *dba* Garden Grove Hospital & Medical Center; (5) Prime Healthcare Huntington Beach, LLC *dba* Huntington Beach Hospital; (6) Prime Healthcare Services—La Palma, LLC *dba* La Palma Intercommunity Hospital; (7) Prime Healthcare Services—Montclair, LLC *dba* Montclair Hospital Medical Center; (8) Prime Healthcare Paradise Valley, LLC *dba* Paradise Valley Hospital; (9) Prime Healthcare Services—San Dimas, LLC *dba* San Dimas Community Hospital; (10) Prime

Healthcare Services—Shasta, LLC *dba* Shasta Regional Medical Center; (11) Prime Healthcare Services—Sherman Oaks, LLC *dba* Sherman Oaks Hospital; (12) Prime Healthcare Anaheim, LLC *dba* West Anaheim Medical Center; (13) Prime Healthcare Services—North Vista, LLC *dba* North Vista Hospital; (14) Prime Healthcare Services—Reno, LLC *dba* Saint Mary's Regional Medical Center; (15) Prime Healthcare Services—St. Mary's Passaic, LLC *dba* St. Mary's General Hospital; (16) Prime Healthcare Services—Garden City, LLC *dba* Garden City Hospital; (17) Prime Healthcare Services—Pampa Regional Medical Center, LLC *dba* Pampa Regional Medical Center; and, (18) Prime Healthcare Foundation, Inc.

ing reasons, the Court **GRANTS** Defendant's Motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Medicare Act

The Medicare Act (hereinafter, the "Act" or "Medicare") was enacted in 1965 as a federal health insurance program primarily benefitting those 65 years of age and older. *See* 42 U.S.C. §§ 1395 *et. seq.* Courts in this district have noted that the Act has been described as "among the most completely impenetrable texts within human experience," requiring "dense reading of the most tortuous kind." *See Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan*, No. SACV 16-01226-DFM, 210 F.Supp.3d 1225, 1227, 2016 WL 5745130, at \*1 (C.D. Cal. Sept. 27, 2016) (citing *Rehab. Ass'n of Virginia, Inc. v. Kozlowski*, 42 F.3d 1444, 1450 (4th Cir. 1994)).

At its enactment, Medicare consisted of only two parts, Parts A and B. But this case concerns Part C of the Medicare Act, enacted in 1997 and creating the Medicare Advantage ("MA") program. 42 U.S.C. §§ 1395w–21–29. Under Part C, Medicare enrollees can receive Medicare benefits through private organizations called Medicare Advantage Organizations (individually "MAO", or collectively "MAOs") instead of the government. *Id.* The government pays MAOs monthly fees in exchange for assuming the risk of providing covered services to enrollees. 42 U.S.C. § 1395w–23. The amount that MAOs receive per enrollee is based on contracts with the Centers for Medicare and Medicaid Services ("CMS"), an agency within the Department of Health and Human Services. *SCAN Health*, 2016 WL 5745130, at \*1 (citing 42 U.S.C. § 1395w–27).

MAOs contract with certain health care providers to provide Medicare services. *SCAN Health*, 2016 WL 5745130, at \*1

(citing 42 U.S.C. § 1395w–22(d)(1)). However, MAOs also must provide coverage for emergency services without regard to the emergency care provider's contractual relationship with the MAO. *Id.* MAOs reimburse non-contracting providers who provide these emergency services based on rates set by the Medicare Act and related regulations. *SCAN Health*, 2016 WL 5745130, at \*2. Payment amounts due to a non-contracted emergency provider are limited to what "the provider would collect if the beneficiary were enrolled in original Medicare." 42 C.F.R. § 422.214(a). Conversely, contracting providers, who enter into signed agreements with MAOs, may "establish[ ] payment amounts for services furnished to a beneficiary enrolled in an MA coordinated care plan, an MSA plan, or an MA private fee-for-service plan" even above the Medicare cap. *See* 42 C.F.R. § 422.214. Title 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that 42 U.S.C. § 405(g) is "the sole avenue for judicial review" for claims " 'arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 614–15, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

### B. Factual Background

Plaintiffs and Humana entered into a series of Letters of Agreement (individually "LOA," and collectively "LOAs") under which Plaintiffs agreed to provide hospital services to Humana's Medicare Advantage health plan members ("MA Members"). (SAC ¶ 29.) In exchange, Humana was required to pay for the services rendered to its members. (SAC ¶ 29.)

Plaintiffs maintain that from January 1, 2012 through February 29, 2016, Defendant underpaid and failed to pay for emergency and other health care services that Plaintiffs provided to approximately 1,300 of Defendants' commercial (PPO and

HMO) health plan members and MA Members. (SAC ¶ 1.) Plaintiffs claim that Defendant achieved such underpayment by unilaterally, systematically altering codes related to the medical services for which Plaintiffs had billed Defendant, and replacing those codes with codes pertaining to lower-cost services or procedures. (SAC ¶¶ 1, 32.) Such billing manipulation allegedly resulted in reduction of payments for the actual services provided by Plaintiffs to Defendant's commercial health plan members ("CP Members") and MA Members. (SAC ¶ 1.) Plaintiffs also claim that Defendant "failed to pay properly Plaintiffs for the inpatient medical services Plaintiffs had provided to Defendants' [CP Members and MA Members]." (SAC ¶ 33.)

As a result of the alleged billing manipulations, Plaintiffs contend that they have been damaged in an amount not less than $8,356,400. (SAC ¶ 36.) In light of the alleged damages, Plaintiffs seek a judgment as follows: (1) the principal sum of $8,356,400; (2) interest on such principal sum at a rate of 15% per annum (pursuant to Cal. Health & Safety Code § 1371 and 1371.5), or 10% per annum (pursuant to Cal. Civ. Code § 3289) for the claims relating to CP Members; (3) interest at the applicable rate under 28 U.S.C. § 1961 and 42 C.F.R. § 405.378 for the claims relating to MA Members (the "MA Claims"); (4) permanent injunctive relief to enjoin Defendants from engaging in the alleged acts; (5) costs of this suit; and, (6) other relief as the Court deems just and proper. (SAC at 17–18.)

## C. Procedural Background

Plaintiffs initiated this action on May 25, 2016, filing their original Complaint with this Court. (Dkt. No. 1.) Plaintiffs filed the First Amended Complaint, (Dkt. No. 19

("FAC")), on August 31, 2016, alleging the following six claims against Defendant: (1) breach of written contract, (FAC at 9); (2) breach of oral contract, (FAC at 10); (3) breach of implied-in-fact contract, (FAC at 11); (4) breach of implied covenant of good faith and fair dealing, (FAC at 12); (5) negligent misrepresentation, (FAC at 12); and, (6) violation of California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, (FAC at 14). On September 14, 2016, Defendant filed its Motion to Dismiss the Plaintiffs' First Amended Complaint, (Dkt. No. 22), which the Court granted on November 4, 2016. (Dkt. No. 30 ("Dismissal Order").)

■ Plaintiffs filed their operative Second Amended Complaint on November 18, 2016, re-alleging the same causes of action. (SAC.) On December 2, 2016, Defendant filed the instant Motion to Dismiss Plaintiffs' Second Amended Complaint. (Mot.) Attached to Defendant's Motion is the Declaration of Daniel Glassman, (Dkt. No. 32–2 ("Glassman Decl.")), wherein Glassman reiterates Defendant's prior request for judicial notice, (see Dkt. No. 23), of fourteen Letters of Agreement (individually, "LOA," collectively, "LOAs"), which the Court previously noticed in its Dismissal Order as being incorporated by reference,[2] (see Dismissal Order at 4–5). Plaintiffs opposed Defendant's Motion on January 3, 2017, (Dkt. No. 33), attaching a Request for Judicial Notice, (Dkt. Nos. 34 ("PRJN")). Finally, Defendant filed a Request for Judicial Notice on January 13, 2017. (Dkt. No. 38 ("DRJN").)

## III. REQUESTS FOR JUDICIAL NOTICE

■ In considering matters presented by the parties, a court may properly take

---

**2.** The Court maintains its prior ruling with respect to these documents; the LOAs are proper subjects for judicial notice because the Plaintiffs rely upon and incorporate the LOAs by reference in the Second Amended Complaint. (See, e.g., SAC ¶ 29.)

judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and (2) matters in the public record. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one "not subject to reasonable dispute in that it (1) is generally known within the territorial jurisdiction of the trial court; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Further, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014). However, a court may not take judicial notice of a fact that is 'subject to reasonable dispute.' " *Lee*, 250 F.3d 668 (quoting Fed. R. Evid. 201(b)).

■ Specifically, Plaintiffs ask the Court to take judicial notice of the following documents: (1) Defendant Humana Insurance Company's "Provider Manual For Physicians, Hospitals And Healthcare Providers" (the "Manual"); and, (2) a page from Defendant's website (the "Web Page") regarding "Medicare Part C Reconsideration (Appeal)." (PRJN at 3.) Defendant does not oppose the request.

Plaintiffs argue that because the Manual and Web Page are available to the public on Defendant's web site, the website's authenticity is not in dispute and "is capable of accurate and ready determinations," the Court may take judicial notice of this information publicly announced in the Manual and Web Page on Defendant's website. (PRJN at 3 (citing *Doron Precision Systems, Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173, 179 n.8 (S.D.N.Y. 2006)).)

■ The documents at issue are matters in the public realm. When a court takes judicial notice of publications like websites and newspaper articles, the court merely notices what was in the · public realm at the time, not whether the contents of those articles were in fact true. *Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.118 (9th Cir. 1999).

■ "Two related concerns, however, generally caution against taking judicial notice of websites. First, as the Seventh Circuit recognized, the internet contains an unlimited supply of information with varying degrees of reliability, permanence, and accessibility." *United States v. Kane*, No. 2:13-CR-250-JAD-VCF, 2013 WL 5797619, at *9 (D. Nev. Oct. 28, 2013) (citing *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648 (7th Cir. 2011)). Corporate websites, in particular, are often marketing tools that contain more "puffery" than fact. *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3rd Cir. 2007). Before taking judicial notice of facts contained in websites, the Third and Seventh Circuits advise authenticating printouts of the webpage under Rule 901, supporting the printouts with affidavits, or holding a hearing on the facts to be noticed in order to give the opposing party an opportunity to respond. *Kane*, 2013 WL 5797619, at *9; *Pickett*, 664 F.3d at 648.

Here, the Court finds that the concerns raised by the Third and Seventh Circuits, and applied in *Kane*, are not present with regard to Plaintiffs' offered documents for the following reasons. First, these documents reflect information published by Defendant itself, which is relevant to material issues in this case. Defendant's opponent ·offers the documents; thus, evidentiary concerns are decreased here. Further, Defendant, rather than Plaintiffs or a third party, had sole control over the information published. As such, concern over the accuracy of the source is decreased (unless Defendant concedes that information it publishes on its web page is inaccurate).

Third, it is not necessary to provide Defendant with an evidentiary hearing; Defendant had opportunity to respond in any reply briefs. Finally, Defendant does not oppose the Request. Accordingly, this Court **GRANTS** Plaintiffs' request for judicial notice of the existence of the Manual and the Web Page in the public realm (while the Court does not take notice the contents of those documents).

Finally, Defendant filed a Request for Judicial Notice, (DRJN), explaining that Plaintiffs failed to include the entire Manual in their PRJN. Defendant attached the complete Manual to its own Request for Judicial Notice. (*See* DRJN.) For the reasons stated above, and because Plaintiffs allege in their SAC that they appealed their claims through Defendant's appeals process and rely upon the Manual to support that position, (*see* Opp'n at 8–9), the Court **GRANTS** Defendant's Request for Judicial Notice of the complete Manual.[3] *See Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005) (considering webpage incorporated by reference where additional portions of website were relevant to and incorporated by the plaintiffs' allegations).

## IV. LEGAL STANDARD

### A. Rule 12(b)(1)

■ A party may contest subject matter jurisdiction pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the moving party may either attack the pleadings on its face or present extrinsic evidence for the district court's consideration. *Kohler v. CJP, Ltd.*, 818 F.Supp.2d 1169, 1172 (C.D. Cal. 2011) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (noting that Rule 12(b)(1) jurisdictional attacks "can be either facial or factual")). A district court must determine whether an attack is facial or factual, as this determination governs the scope of the court's review. *See Kohler*, 818 F.Supp.2d at 1172.

■ When deciding a Rule 12(b)(1) motion that attacks the complaint on its face, a court "must accept the allegations of the complaint as true." *Id.* (citing *Valdez v. United States*, 837 F.Supp. 1065, 1067 (E.D. Cal. 1993), *aff'd*, 56 F.3d 1177 (9th Cir. 1995)). But in deciding a Rule 12(b)(1) motion that raises a factual attack, courts "may weigh the evidence presented, and determine the facts in order to evaluate whether they have power to hear the case." *Id.* (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)); *see also White*, 227 F.3d at 1242 (when a motion relies on extrinsic evidence, a court "need not presume the truthfulness of the plaintiffs' allegations").

### B. Rule 12(b)(6)

■ Under Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual

---

**3.** In referencing the "Manual," the Court refers to the complete Manual filed by Defendant at Dkt. No. 38.

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.*

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, the court must determine "whether they plausibly give rise to an entitlement to relief." *See id.* at 679, 129 S.Ct. 1937; *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."). Leave to amend, however, "is properly denied ... if amendment would be futile." *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## V. DISCUSSION

As noted above, Plaintiffs bring a number of state law claims against Defendant Humana. Plaintiffs' claims are based upon allegedly unreimbursed healthcare expenses deriving from Plaintiffs' treatment of Defendant's (1) MA Members, and (2) CP Members. With respect to MA Members' treatment expenses, Plaintiffs bring causes of action for breach of contract and breach of the covenant of good faith and fair dealing (the "MA Claims"). (*See* SAC at 11–13.) With respect to CP Members' treatment expenses, Plaintiffs bring a claim for breach of oral contract, breach of implied-in-fact contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, and violation of Cal. Bus. & Prof. Code § 17200 (the "CP Claims"). (*See generally* SAC.)

Defendant argues that the Court should dismiss Plaintiffs' MA Claims for the following reasons: (1) Plaintiffs' breach of contract cause of action should be dismissed in its entirety because Plaintiffs failed to exhaust their administrative remedies; (2) Plaintiffs' other causes of action should be dismissed for failure to exhaust insofar as they relate to MA Members' treatment expenses; and, (3) Plaintiffs' causes of action are preempted under the Medicare Act as they relate to areas governed by Medicare Advantage standards.

Defendant also avers that the Court should dismiss Plaintiffs' negligent misrepresentation claim (a CP Claim) on the following grounds: (1) Plaintiffs fail to plead their negligent misrepresentation cause of action because courts do not recognize a claim for a negligent false promise; and, (2) Plaintiffs failed to plead their negligent misrepresentation claim with sufficient particularity to satisfy Rule 9(b). (Mot. at 2.) The Court will address Defendant's arguments for dismissal of the MA Claims and CP Claim separately.

### A. Plaintiffs' MA Claims

Plaintiffs bring a (1) breach of contract claim, and (2) breach of the covenant of good faith and fair dealing claim based upon disputed expenses relating to MA Members. (*See* SAC at 11–13.) As explained below, the Court finds that Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims must be dismissed at this time to the extent they are brought based upon charges relating to MA Members, because such claims arise under the Medicare Act; thus the Court's jurisdiction over the MA Claims is subject to the exhaustion requirement of section 405(h) of the Act. For the following reasons, the Court **DISMISSES without prejudice** Plaintiffs' MA Claims for breach of contract and breach of the covenant of good faith and fair dealing.

### 1. This Court Has Jurisdiction Over Plaintiffs' MA Claims Only If Plaintiffs Have Satisfied the Act's Exhaustion Requirement

■■■ The Act's exhaustion requirement, 42 U.S.C. § 405(h), makes judicial review under a related provision, 42 U.S.C. § 405(g), "the sole avenue for judicial review" for claims " 'arising under' the Medicare Act." *Heckler*, 466 U.S. at 614–15, 104 S.Ct. 2013. The key inquiry in determining whether section 405(h) requires exhaustion before this Court can exercise jurisdiction is whether the claim "arises under" the Act. *Ardary*, 98 F.3d at 499 (citing *Heckler*, 466 U.S. at 614–15, 104 S.Ct. 2013).

■■■ In the Dismissal Order, this Court explained in great detail that due to Ninth Circuit appellate and district court precedent, precedent from other jurisdictions, and the similarity between this case and *SCAN Health*, the Court's jurisdiction over Plaintiffs' unexhausted claims is limited to those claims that do not "arise under" Medicare. (Dismissal Order at 12.) Further, the Court rejected Plaintiffs' argument that their claims do not seek to recover benefits, (*see* Dismissal Order at 12–13 (citing *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1115 (9th Cir. 2003)) ("In *Kaiser*, the Ninth Circuit concluded that Medicare reimbursements to providers should also be considered, broadly speaking, a 'claim for benefits,' as the *Heckler* Court used that phrase.").)

And ultimately, the Court found that Plaintiffs' MA Claims, like the claims in *SCAN Health*, were inextricably intertwined with a claim for Medicare benefits and "arise under" Medicare for a number of reasons, including: (1) under Ninth Circuit precedent, Plaintiffs' MA Claims may arise under the act in spite of Plaintiffs' failure to refer to the term "Medicare"; (2) as in *Uhm*, the Plaintiffs had failed to allege in their first cause of action that Defendant promised anything more than to abide by the requirements of the Act; thus the first cause of action for breach of written contract is inextricably intertwined with a claim for Medicare benefits; and, (3) Plaintiffs failed to explain how their state law claims are anything more than an attempt to be reimbursed for underpayments of their Medicare benefits. (*See* Dismissal Order at 15.) The material allegations in the SAC with respect to Plaintiffs' MA Claims are largely unchanged. (*Compare* FAC at 9–11 *with* SAC at 11–12; *but see* SAC ¶¶ 35, 41.) Accordingly, this Court may exercise jurisdiction over the MA Claims pleaded in the SAC only if Plaintiffs have adequately pleaded exhaustion of the Act's requirements.

### 2. Exhaustion of Administrative Remedies

■■■ The issue of exhaustion bears on the district court's jurisdiction, *see Kaiser*, 347 F.3d at 1115. The Act's exhaustion requirement, 42 U.S.C. § 405(h), makes judicial review under a related provision, 42 U.S.C. § 405(g), "the sole avenue for

judicial review" for claims " 'arising under' the Medicare Act." *Heckler*, 466 U.S. at 614–15, 104 S.Ct. 2013. The Supreme Court has held that "the exhaustion requirement of § 405(g) consists of a *non-waivable* requirement that a claim for benefits shall have been presented to the Secretary, and a *waivable* requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Id.* at 617, 104 S.Ct. 2013 (emphasis added) (internal quotation marks omitted) (citation omitted).

■■■■ Only once the Secretary has issued a "final decision" may the individual seek judicial review of that determination. *Id.* at 605, 104 S.Ct. 2013. A "final decision" is rendered only after the individual has "pressed his claim" through all levels of administrative review. *Id.*; *Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496, 498 (9th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (Dec. 26, 1996). In sum, "[j]urisdiction over cases 'arising under' Medicare exists only under 42 U.S.C. § 405(g), which *requires an agency decision* in advance of judicial review." *Kaiser*, 347 F.3d at 1111 (emphasis added). Here, Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing causes of action arise under the Act. (*See* Dismissal Order at 14–18.) Accordingly, this Court must determine whether Plaintiffs have adequately pleaded exhaustion in accordance with the Act.

■■■ Defendant argues that Plaintiffs again fail to plead exhaustion, and thus the Court should dismiss Plaintiffs' claims. Defendant explains that Plaintiffs' allegation that "Plaintiffs have appealed Defendants' non-payment and/or underpayment of Plaintiffs' MA claims through the Medicare Appeals process," (Mot. at 8 (citing SAC ¶ 41)), is insufficient to allege that "Plaintiffs actually *exhausted* their administrative remedies. And this mere conclu-

sion is devoid of *any* factual information." (Mot. at 8 (emphasis in original).) In light of Plaintiffs' failure to plead additional facts stating administrative exhaustion, Defendant concludes that "Plaintiffs have not (and most likely cannot) properly allege they have *exhausted* all administrative remedies under the Medicare Act." (Mot. at 9 (emphasis in original).)

Plaintiffs respond that they have exhausted their "administrative remedies by complying with Humana's appeal and grievance procedures pursuant to the LOAs...." (Opp'n at 7–8.) Plaintiffs explain that pursuant to paragraph 8 of the LOAs, the "Hospital *shall* also *comply with Humana's appeal and grievance procedures*." (Opp'n at 8 (citing Glassman Decl., Exs. A–N) (emphasis in original).) Additionally, Plaintiffs claim that Humana opted to require compliance with its own appeal and grievance procedure in lieu of the Medicare Act's appeals process. (Opp'n at 9–10.) Finally, Plaintiffs apply a "fundamental axiom of contract interpretation" to argue that "the general [LOA] provision requiring the Hospitals to comply with Medicare rules and regulations is subject to, and controlled by, [the more specific] paragraph 8 of the LOAs." (Opp'n at 10.) In sum, Plaintiffs' position is that they have complied with the Medicare Act's exhaustion requirement because they have appealed Humana's adverse determinations using Humana's internal appeal and grievance procedures. (*See* Opp'n at 11.)

Defendant replies, however, (and the Court agrees,) that the Supreme Court has held that "the exhaustion requirement of § 405(g) consists of a *non-waivable* requirement that a claim for benefits shall have been presented to the Secretary, and a *waivable* requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." *Heckler*, 466 U.S. at 614–15, 104 S.Ct.

2013. at 617 (emphasis added) (internal quotations and citation omitted); (*see* Reply at 3). Defendant also explains that its internal appeals process is the 'first step in the [Medicare Act's] appeals process.'" (Reply at 4.)

Plaintiffs fail to allege facts that (1) their MA Claims (claims for benefits) have been presented to the Secretary, or (2) Defendant has waived the requirement that the administrative remedies be fully pursued by Plaintiffs. Plaintiffs' reference to the Manual's language simply does not reasonably support their argument that Defendant waived the Medicare Act's exhaustion requirement. Nor do Plaintiffs offer binding (or persuasive) case law to support their position that Defendant's institution of an internal appeals procedure constitutes a permissible waiver of the Medicare Act's exhaustion requirement. But a Ninth Circuit district court, in *Doctors Med. Ctr. of Modesto, Inc. v. Kaiser Found. Health Plan, Inc.*, 989 F.Supp.2d 1009, 1013–14 (E.D. Cal. 2013), explained the interaction between internal appeals processes and the Medicare exhaustion requirement:

> CMS regulations provide an administrative appeal process that allows a provider that furnishes services to an enrollee to *request an 'organization determination,'* a determination 'with respect to ... [p]ayment for any ... health services furnished by a provider other than the MA organization that the enrollee believes are covered under Medicare.' *After the MA organization renders its organization determination regarding payment,* any party to the organization determination, including '[a]ny other provider or entity (other than the MA organization) determined to have an appealable interest in the proceeding,' may seek reconsideration of the organization determination. After reconsideration of the organization determination, any party to the reconsideration may request a hearing before an administrative law judge ('ALJ'). After the ALJ renders a decision, any party to the hearing may request a review by the Medicare Appeals Council. After the Medicare Appeals Council makes its final decision, a party may seek judicial review in federal court.

*Modesto*, 989 F.Supp.2d at 1013–14 (emphasis added) (internal citations omitted). The Modesto court's explanation supports Defendant's position that its internal appeals process is a step, among others, in satisfying the Act's exhaustion requirement. Thus, because Plaintiffs fail to allege that they have exhausted their administrative remedies under sections 405(g) and (h), (*see* SAC ¶¶ 35, 41) the Court may not exercise jurisdiction over Plaintiffs' breach of contract cause of action.[4]

### 3. Breach of Covenant of Good Faith and Fair Dealing

Finally, like the breach of written contract MA Claim, the breach of the covenant of good faith and fair dealing MA Claim[5] is subject to exhaustion under the

---

4. Unless and until this Court has jurisdiction to hear the MA Claims, it need not consider the sufficiency of the MA Claim pleadings under Fed. R. Civ. P. 12(b)(6). Moreover, the Court does not reach the Parties' arguments regarding Medicare's preemption of Plaintiffs' state law breach of contract and breach of good faith and fair dealing MA Claims, as these are arguments moot as a result of the Court's ruling that the Plaintiffs' claims are subject to the Act's exhaustion requirement.

5. The Court notes that Plaintiffs allege a breach of the covenant of good faith and fair dealing claim based upon both MA Members' treatment expenses and CP Members' treatment expenses. The instant ruling should only be read to apply to the good faith and fair dealing claim as it relates to MA Members' treatment expenses.

Act. Plaintiffs' failure to plead exhaustion with respect to their MA Claims leads Plaintiffs' breach of the covenant of good faith and fair dealing claim to fail insofar as it applies to MA Members' treatment expenses.[6]

### B. Plaintiffs' Negligent Misrepresentation Claim

In their SAC, Plaintiffs allege five CP Claims on the basis of unreimbursed treatment expenses relating to CP Members. In the instant Motion, Defendant challenges only the sufficiency of Plaintiffs' pleading of the negligent misrepresentation CP Claim. For the reasons below, the Court finds that Plaintiffs have failed to adequately plead their negligent misrepresentation claim relating to CP Members' treatment expenses.

■ To state a claim for negligent misrepresentation, Plaintiffs must allege: " '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' " *Wells Fargo Bank, N.A. v. FSI, Fin. Sols., Inc.*, 196 Cal.App.4th 1559, 1573, 127 Cal.Rptr.3d 589 (Cal. Ct. App. 2011) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal.App.4th 35, 50, 89 Cal.Rptr.3d 473 (Cal. Ct. App. 2009)).

#### 1. Plaintiffs Plead A False Promise to Perform in The Future

■ Defendant claims that Plaintiffs fail to "allege that Humana misrepresented a past or existing material fact as

required to state a claim for negligent misrepresentation under California law. (Mot. at 11.) Plaintiffs respond that Defendant "falsely verified its members' coverage thereby prompting the hospital to provide medical services to those members at its detriment." (Opp'n at 13.)

■ Plaintiffs fail to plead the first element of a negligent misrepresentation claim: "the misrepresentation of a past or existing material fact." *Wells Fargo Bank*, 196 Cal.App.4th at 1573, 127 Cal.Rptr.3d 589 (emphasis added). "Although a false promise to perform in the future can support an intentional misrepresentation claim, it does not support a claim for negligent misrepresentation." *Stockton Mortg., Inc. v. Tope*, 233 Cal.App.4th 437, 458, 183 Cal.Rptr.3d 186 (Cal. Ct. App. 2014) (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 158–59, 2 Cal. Rptr.2d 861 (Cal. Ct. App. 1991)). In *Tarmann*, a promise to "pay for [the insured's] repairs immediately upon completion" was a promise of future performance, not actionable under a negligent misrepresentation claim. *Tarmann*, 2 Cal.App.4th at 158, 2 Cal.Rptr.2d 861. Similarly, in *Stockton Mortgage*, a promise to "obtain a release of the notice of abatement action prior to the close of escrow ... was a promise of future performance, and thus [could not] be the basis for a negligent misrepresentation cause of action." *Stockton Mortg.*, 233 Cal.App.4th at 458, 183 Cal.Rptr.3d 186.

Here, Plaintiffs allege a number of representations: "[B]ased on the authorizations, Plaintiffs *would be reimbursed* for the services provided to Defendants' commercial health plan members at 100% of

---

6. Defendant also requests that "the remainder of Plaintiffs' causes of action ... be dismissed to the extent they apply to Medicare Advantage patients." (Mot. at 11.) The Court declines to rule upon this request as the request is unsupported by any allegations in the SAC; the remaining claims as pleaded refer to "commercial health plan" members. (*See, e.g.,* SAC at 13–14 (breach of implied-in-fact contract claim).)

Plaintiffs' billed charges." (SAC ¶ 60 (emphasis added).) Plaintiffs also allege that Defendants' agents represented that CP Members were eligible beneficiaries under their health plans and that Plaintiffs were authorized to render medically necessary services to CP Members. (*See* SAC ¶ 60.) However, Plaintiffs' allege that the falsity in the above representations lies in the fact that "Defendants had no intention to pay Plaintiffs at 100% of Plaintiffs' billed charges for the services rendered to Defendants' commercial health plan members." (SAC ¶ 61.) Plaintiffs do not allege how the representations regarding CP Members' eligibility and Plaintiffs' authorization are false.[7] Thus, the pleadings indicate merely a false promise to pay Plaintiffs at a certain billing rate, for treatment rendered to CP Members in the future. As a result, Plaintiffs allegations presently plead a misrepresentation of past or present fact.

### 2. Plaintiffs Fail to Plead Negligent Misrepresentation With Particularity

 Even assuming Plaintiffs adequately pleaded a misrepresentation of a past or existing material fact, Plaintiffs' negligent misrepresentation claim is inadequately pleaded because Plaintiffs fail to plead this cause of action with the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiffs claim that their cause of action for negligent misrepresentation is not subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). This Court disagrees. *See Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." (citing cases)); *see also Davenport v. Seattle Bank*, No. CV-15-04475-BRO-JEMX, 2015 WL 4886393, at *3 (C.D. Cal. Aug. 14, 2015). To plead with particularity, Plaintiff must include "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Here, Plaintiffs allege only vaguely that "Defendants' agents orally represented," "on or about the time Plaintiffs admitted Defendants' commercial health plan members" that Defendant would reimburse Plaintiffs "for the services provided to Defendants' commercial health plan members at 100% of Plaintiffs' billed charges." (SAC ¶ 60.) The SAC does not allege with particularity when and where Defendants allegedly made the representations, which of Defendant's agents made the alleged representations, to whom the representations were made, and how the representations regarding CP Members' eligibility and Plaintiffs' authorization are false. *Cf. Houston v. Medtronic, Inc.*, 957 F.Supp.2d 1166, 1180 (C.D. Cal. 2013); *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"). As such, Plaintiffs' negligent misrepresentation cause of action fails for this additional reason. Accordingly, the Court **DISMISSES without preju-**

---

7. Plaintiffs offer *Hoag Memorial Hosp. v. Managed Care Admins.*, 820 F.Supp. 1232, 1233 (C.D. Cal 1993), a case involving ERISA, to argue that Defendant's alleged representations regarding coverage and authorization to render services suffice to establish the "mis-representation of past or existing material fact" prong. However, *Hoag*'s holding cannot compensate for Plaintiffs' failure to allege how the representations regarding coverage and authorization to render services were false.

dice Plaintiffs' negligent misrepresentation CP Claim.

## VI. CONCLUSION

Because the Court may not exercise jurisdiction over Plaintiffs' unexhausted MA Claims, which arise under the Act, Defendant's 12(b)(1) Motion is **GRANTED** and Plaintiffs' MA Claims are **DISMISSED without prejudice** to properly pleading exhaustion.

Further, Defendant's 12(b)(6) Motion is **GRANTED** with respect to Plaintiffs' negligent misrepresentation CP Claim. The negligent misrepresentation CP Claim is hereby **DISMISSED without prejudice**. Plaintiffs may file an amended complaint, if any, by February 13, 2017 by 4:00 p.m. The hearing set for January 30, 2017 is hereby **VACATED**.

**IT IS SO ORDERED.**